<u>AFFIDAVIT</u>

I, Jeffrey Stephenson, being duly sworn, state as follows:

1. I am employed by the Rutland County Sheriff's Department, currently assigned to the Vermont State Police Narcotics Investigation Unit (Vermont Drug Task Force) (VDTF). I have been a law enforcement officer since September of 2005. I am currently assigned to the Narcotics Investigation unit as a Detective, specializing in the enforcement of Vermont's regulated drug laws. I have been assigned to the Narcotics Investigation Unit since November 14, 2011. I have completed the Basic Training Course at the Vermont Police Academy graduating in May of 2006. I have also completed the Drug Enforcement Administration's (DEA) Basic Narcotics Investigator school and received additional training in undercover operations. During my career, I have been involved in numerous cases which resulted in the arrests and convictions for possession, sale and manufacture of regulated drugs. This affidavit is submitted to show probable cause to believe that AL S. PAYNE, also known by the nicknames "Sneakers" or "Q;" KIARA MALDONADO, also known as "Crystal;" and ROBERT L. AVARY have committed the offense of conspiring to distribute cocaine base and heroin in Vermont on or about October 22, 2014, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The facts set forth below are either known to me personally or have been related to me by persons having direct knowledge of the events giving rise to this Criminal Complaint, including Federal Bureau of Investigation (FBI) Special Agent Christopher Destito and other members of the VDTF. This affidavit is intended to set forth probable cause and does not include every fact known to law enforcement about the events described below.

2. The FBI, DEA, and VDTF have been investigating narcotics trafficking in the Rutland, Vermont area involving, among others, AL S. PAYNE, a.k.a. "Sneakers" and "Q," and his

1

girlfriend, KIARA L. MALDONADO, a.k.a. "Crystal." PAYNE, MALDONADO, and their associates have been under investigation in connection with traveling from New York to Rutland, Vermont with large quantities of cocaine base, commonly known as "crack" or "crack" cocaine, which they sell in the Rutland area.

3. SA Destito has spoken with a Confidential Informant ("CI#1"), who identified a picture of PAYNE as the person CI#1 knew as "Q," which is one of PAYNE's aliases. CI#1 also said that PAYNE used the name "Sneakers." CI#1 advised CI#1 has known PAYNE since approximately 2011, and has learned from PAYNE that he is from New York. CI#1 is a user of "crack cocaine." CI#1 has admitted to selling crack cocaine for PAYNE and others in the past. CI#1 has not been arrested for those activities and has no history of criminal convictions. According to CI#1, after meeting PAYNE in 2011, CI#1 began purchasing crack cocaine from PAYNE and has physically observed PAYNE in Rutland with quantities of crack cocaine the size of two baseballs on at least 5 occasions.

4. According to CI#1, PAYNE has had at least three cellular telephone numbers since CI#1 has known him, to include the cell phone with number 347-563-4995, which is the one that CI#1 has recently contacted to communicate with PAYNE.

5. On 05/24/14, the Vermont State Police (VSP) conducted a traffic stop of a Gray 2006 Infiniti G35, bearing New York license plate GDP4702, registered to Albert Payne, date of birth 12/14/68, 1423 Bushwick Avenue, 1L, Brooklyn, New York. (I believe the Albert Payne on the registration to be Payne's father, based on the date of birth.) Driving the vehicle was PAYNE, and he had three passengers in the car. The stop resulted in seizure from PAYNE of $4020.00 in United States currency, some of which was concealed in his sock.

6. On 10/16/14, CI#1 telephonically contacted SA Destito and advised that PAYNE was

in Rutland with his girlfriend, who CI#1 knew as "Crystal" (law enforcement has identified her as KIARA MALDONADO, as described below). CI#1 advised Crystal telephonically contacted CI#1 and advised CI#1 that if CI#1 wanted anything Crystal was "good," which meant that Crystal had crack cocaine to sell.

7. On 10/17/14, CI#1 was instructed to make a recorded telephone call to the 4995 number to arrange a controlled purchase of crack cocaine from PAYNE.[1] When CI#1 made the recorded call, a female CI#1 identified as Crystal answered the cellular telephone. CI#1 asked to speak to PAYNE, and Crystal advised that PAYNE was in the shower. Approximately 15 minutes later, CI#1 placed another recorded call to the same number. CI#1 spoke with a male whom CI#1 recognized as PAYNE. CI#1 asked to purchase two $100.00 pieces of crack cocaine. CI#1 advised PAYNE that the crack cocaine was for CI#1 so he should make sure that the crack cocaine pieces were the right size.

8. In the recorded call, PAYNE agreed to meet CI#1 at the McDonald's restaurant on Woodstock Avenue, Rutland, Vermont, in 15 minutes. Surveillance was established at the McDonald's by the Vermont Drug Task Force (VDTF). A member of VDTF advised me that he observed CI#1 arrive at the McDonald's, and then saw a Gray Infiniti G35 bearing New York license plate GDP4702 arrive at the McDonald's. The vehicle was driven by a black male, later identified as ROBERT L. AVARY (as described below), and MALDONADO (aka Crystal) sat in the passenger's seat. MALDONADO exited the vehicle, got back in the vehicle with CI#1, and according to CI#1 sold CI#1 crack cocaine in the vehicle. After CI#1 exited the vehicle, the

---

[1] For each controlled buy described herein, CI#1 was searched before and after the transaction, and no drugs, money, or contraband were located on CI#1's person. CI#1 was also outfitted with a hidden audio recording transmitter for each buy, which allowed for audio monitoring of the deal by law enforcement. For each buy, CI#1 received U.S. Currency from VDTF, the serial numbers of which were recorded, in order to make the purchase.

3

vehicle was driven to the Mendon Mountain Orchards Motel, Route 4, Mendon, Vermont.

9. CI#1 was debriefed by the VDTF following the meeting, and CI#1 advised that the female interacted with Crystal and that Crystal provided CI#1 with two pieces of crack cocaine. CI#1 turned the substance purchased from Crystal over to VDTF. The suspected crack cocaine weighed approximately two grams with packaging and field tested positive for cocaine. After the deal, law enforcement showed CI#1 a picture of KIARA MALDONADO, and CI#1 confirmed it was the person CI#1 knew as Crystal and the person from whom CI#1 had just purchased crack cocaine.

10. Later on October 17, 2014, the Vermont State Police (VSP) conducted a traffic stop of the aforementioned Infiniti G35 for tinted windows, and identified the occupants as PAYNE, MALDONADO, and ROBERT AVARY. The driver, AVARY, was issued a warning. The vehicle was surveilled to the Economy Inn & Suites, 238 South Main Street, Rutland, Vermont (Economy Suites). Law enforcement observed the occupants enter two separate rooms at the Economy Suites. Officers subsequently observed PAYNE, MALDONADO, and AVARY and the Infiniti G35 coming and going from the Economy Suites. A VDTF officer who conducted surveillance of the controlled buy earlier in the day was able to confirm that AVARY is the individual who operated the Infiniti during the buy.

11. In the evening of October 17, 2014, CI#1 conducted a second controlled purchase of crack cocaine from MALDONADO at a known location in Rutland. CI#1 contacted MALDONADO on the 4995 number to arrange the deal. Law enforcement dropped CI#1 off at the arranged location and kept CI#1 under surveillance. Law enforcement observed the aforementioned Infiniti G35 leave the Economy Suites, arrive to the pre-arranged location, and pull up to CI#1. Law enforcement observed CI#1 enter the vehicle. CI#1 later exited the vehicle

and turned a substance over to law enforcement that field tested positive for cocaine and weighed about 3.9 grams with packaging. CI#1 reported that CI#1 purchased the crack from MALDONADO in the car and that while making the purchase CI#1 saw AL PAYNE in the rear the vehicle and thanked him for selling good quality crack cocaine.[2] A later review of the audio recording from the recording device worn by CI#1 was consistent with CI#1's account of what happened in the vehicle.

12. On October 19, 2014, I worked with CI#1 to make another controlled buy of crack cocaine. CI#1 placed a recorded call to the 4995 phone to arrange the deal. A male voice that CI#1 did not recognize answered the phone. CI#1 told this male that CI#1 would be getting money, and the male said to call back when CI#1 had the money. Later in the day, CI#1 called the same number and the same male answered and agreed to meet CI#1 at an agreed location. CI#1 told the male to make sure "Sneakers" made it good for CI#1 and the male responded, "Alright." After the call, CI#1 confirmed that the same male was on the phone for both recorded calls. Law enforcement dropped CI#1 off at the agreed location and conducted surveillance. Law enforcement observed the aforementioned Infiniti leave the Economy Suites, arrive to the prearranged meet location, and stop near CI#1. CI#1 got into the vehicle, which traveled some distance, then pulled over. CI#1 subsequently exited the vehicle and later turned over a substance to law enforcement that field tested positive for cocaine. The substance weighed 3.9 grams with packaging.

13. CI#1 reported that, upon entering the Infiniti, CI#1 observed PAYNE in the front passenger seat. CI#1 observed the male driver to be the same person (identified by law

---

[2] CI#1 stated that the driver of the vehicle was male and that CI#1 could not see the driver because it was dark in the vehicle.

enforcement as AVARY) who drove the Infiniti during the first controlled buy on 10/17/14. CI#1 reported that CI#1 handed PAYNE the prerecorded VDTF funds and that PAYNE handed CI#1 two packages of crack.

14. Following the controlled buy, a VDTF member saw the Infiniti return to the Economy Suites. Two males exited the vehicle and entered the Economy Suites. The surveillance officer positively identified one of those males as PAYNE and captured them on video.

15. On October 21, 2014, CI#1 advised law enforcement that CI#1 had had unrecorded phone contact with PAYNE who advised, in substance, that he was in New York but would be returning to Rutland. On October 22, 2014, CI#1 advised that CI#1 again had unrecorded phone contact with PAYNE and that PAYNE advised that he was on his way to Rutland and presently in Troy, New York. Law enforcement made contemporaneous observation of the aforementioned Infiniti in Troy, New York, headed in the direction of Rutland. Later on October 22, 2014, law enforcement conducted a motor vehicle stop in Wallingford, Vermont, and identified the occupants of the vehicle as AVARY (driver), PAYNE (front passenger), MALDONADO (passenger's side rear passenger), and JULIA SANTIAGO (driver's side rear passenger).

16. During a search incident to her arrest, MALDONADO was determined to have approximately 45.4 grams of heroin and approximately 56.5 grams of crack cocaine (weights are with packaging) hidden in her vagina. The substances field tested positive for heroin and cocaine, respectively. The drugs were separated according to type through the use of plastic sandwich bags and then rolled into a cylinder before being placed into a condom and inserted into MALDONADO's vagina. The cylinder package measured approximately six inches long

and approximately six and one half inches in diameter. In statements after the drugs were seized, MALDONADO told a DEA agent working with me that she understood that she was carrying heroin and crack cocaine, which belonged to PAYNE. She also stated that the previous week she had brought drugs to Rutland for PAYNE. She also described herself as PAYNE's girlfriend.

17. During an interview at the barracks, AVARY told another officer that he drove PAYNE around. He stated that he was paid $50 to drive PAYNE last week, but that he was not paid on this occasion. He denied knowing about drug trafficking activity.

18. During an interview at the barracks, another officer described the evidence listed above to PAYNE, and PAYNE said in substance that whatever law enforcement had on him it had and that the other people in the car were not responsible.

Dated at Burlington, in the District of Vermont, this 23rd day of October, 2014.

_____
Detective Jeffrey Stephenson
Vermont State Police Drug Task Force


Sworn to and subscribed before me this 23d day of October, 2014.

_____
JOHN M. CONROY
United States Magistrate Judge